IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| J&J SPORTS PRODUCTIONS, INC., AS BROADCAST LICENSEE OF THE MAY 2, 2015, MAYWEATHER/PACQUIAO FIGHT, § § § § § § § § § § § § § *Plaintiff,* vs. ANTHONY R GRAYER, INDIVIDUALLY AND DOING BUSINESS AS CLUB SUPREME, *Defendant.* | | SA-18-CV-00377-DAE |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

**To the Honorable United States District Judge David A. Ezra:**

This Report and Recommendation concerns Plaintiff J&J Sports Productions, Inc.'s, Motion for Final Default Judgment against Defendant Anthony R. Grayer [#8]. On September 6, 2018, the Honorable David A. Ezra referred this motion to the undersigned for disposition pursuant to Federal Rule of Civil Procedure 72 and Rules CV-72 and 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. The undersigned has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, it is recommended that the Court **GRANT IN PART AND DENY IN PART** Plaintiff's Motion for Final Default Judgment.

### I. Jurisdiction

This case arises under Sections 553 and 605 of the Communications Act of 1934, as amended, 47 U.S.C. §§ 553, 605. (Compl. [#1] at ¶ 3). Accordingly, this Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331.

1

## II.  Procedural History

Plaintiff J&J Sports Productions, Inc., ("Plaintiff") originally filed this action against Defendant Anthony R. Grayer, individually and doing business as Club Supreme, ("Defendant") on April 27, 2018 [#1].  Plaintiff alleges that Defendant illegally intercepted and exhibited the close-circuit broadcast of the Floyd Mayweather Jr. vs. Manny Pacquiao fight ("the Event") on May 2, 2015.  (*Id.* at ¶ 1–2.)  Defendant was served with a Summons [#4] and a copy of the Complaint on July 6, 2018 [#5].  Defendant's answer was due on July 27, 2018, but Defendant has not filed a responsive pleading or otherwise made an appearance in this case.  (*Id.* at ¶ 3.)  The Court ordered Plaintiff to move for an entry of default and a default judgment against Defendant on August 29, 2018 [#6].  Accordingly, Plaintiff filed a Request for Entry of Default [#7] and a Motion for Final Default Judgment [#8] on September 5, 2018.  Default was entered against Defendant on September 6, 2018 [#9].

By its motion, Plaintiff seeks both a default judgment against Defendant for the pirating of satellite transmissions and an award of: (1) statutory damages in the amount of $10,000 under 47 U.S.C. § 605(e)(3)(C)(i)(II); (2) additional damages in the amount of $50,000 for Defendant's alleged willful acts under 47 U.S.C. § 605(e)(3)(C)(ii); (3) attorneys' fees in the amount of one-third (1/3) of the damages awarded herein or, alternatively, a lodestar fee of $1,000; and (4) costs and post-judgment interest at the highest lawful rate.  (Mot. for Default J. [#8] at ¶ 23.)  In order to ensure that Defendant received a copy of Plaintiff's Motion for Final Default Judgment, as well as an opportunity to cure his defect, the Court ordered the District Clerk's Office to mail a copy of the motion to Defendant at his address on record with this Court, and further ordered Defendant to respond to the motion on or before September 28, 2018 [#10].  The District Clerk's Office mailed a copy of the pertinent court filings via first-class mail and certified mail, return receipt requested,

to Defendant's address on file [#12], but the certified mail was returned to sender as unclaimed and unable to forward [#13]. Defendant has not filed a response to the motion. In summary, to date, there has been no response filed to Plaintiff's Motion for Final Default Judgment, and Defendant has not otherwise made an appearance in this case.

### III.  Legal Standard

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Once default has been entered, the court may enter a default judgment against the defaulting defendant upon motion by the plaintiff. *See* Fed. R. Civ. P. 55(b); *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). In considering a motion for default judgment, the court accepts as true the well-pleaded allegations of facts in the complaint (except regarding damages) but must determine whether those facts state a claim upon which relief may be granted. *See Matter of Dierschke*, 975 F.2d 181, 185 (5th Cir. 1992) (stating that a defaulting party is deemed to have admitted all well-pleaded allegations of the complaint); *United States ex rel. M-Co. Constr., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987). Thus, for a plaintiff to obtain a default judgment, "[t]here must be a sufficient basis in the pleadings for the judgment entered." *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975); *see Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001) ("[A] party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default.") (quoting *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996)).

### IV.  Analysis

The record in this case establishes that Defendant failed to plead or otherwise defend against Plaintiff's claim. Defendant was served with a copy of Plaintiff's Complaint, but failed to

answer or otherwise respond.  Accordingly, the undersigned finds that the Clerk properly entered default, and Plaintiff is entitled to default judgment because the facts alleged in Plaintiff's Complaint state a claim upon which relief may be granted.

### A.   Plaintiff is entitled to a default judgment against Defendant.

Plaintiff's Complaint alleges that Defendant's conduct constitutes the unauthorized publication or use of communications in violation of Section 605 of the Communications Act of 1934 ("the Act").  Section 605 of the Act prohibits a person not authorized by the sender from "receiv[ing] or assist[ing] in receiving any interstate or foreign communication by radio and us[ing] such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto."  47 U.S.C. § 605(a).  Section 605 further prohibits a person who has received an intercepted radio communication from divulging or publishing the contents of the communication or using the communication for his own benefit or for the benefit of another not entitled thereto.  *See id.*  The statute affords a private right of action to "[a]ny person aggrieved by any violation of" Section 605(a) of the Act.  *Id.* at § 605(e)(3)(A).  To state a claim for violation of Section 605(a), a plaintiff must demonstrate that the defendant "intercepted or otherwise unlawfully appropriated [the plaintiff's] transmissions" or that the defendant exhibited an intercepted transmission without authorization.  *DIRECTV Inc. v. Robson*, 420 F.3d 532, 537 (5th Cir. 2005); *Joe Hand Promotions, Inc. v. Macias*, No. H–11–1773, 2012 WL 950157, at *2 (S.D. Tex. Mar. 19, 2012) ("The FCA is a strict liability statute, and the plaintiff is required only to prove the unauthorized exhibition of the intercepted transmission.").

Plaintiff's Complaint alleges that it is the licensing company that was exclusively authorized to sub-license the closed-circuit broadcast of the Event at closed-circuit locations in Texas and that the closed-circuit broadcast of the Event could be exhibited in a commercial

establishment in Texas only if the establishment was contractually authorized to do so by Plaintiff. (Pl.'s Compl. at ¶¶ 5–6.)  While the transmission of the Event was available to Defendant to purchase for broadcast at Club Supreme ("the Establishment"), Defendant allegedly did not contract with Plaintiff or any of its agents to obtain the rights to broadcast the Event.  (*Id.* at ¶ 9.) According to Plaintiff, the transmission of the Event "originated via satellite and was electronically coded or 'scrambled'" such that "[i]n order for the signal to be received and telecast clearly, it had to be decoded with electronic decoding equipment."  (*Id.* at ¶ 8.)  Only the establishments that contracted with Plaintiff to broadcast the Event were provided with the capability to receive and decode the signal.  (*Id.* at ¶ 10.)

Plaintiff claims that, "[o]n May 2, 2015, "either by satellite transmission or through unauthorized receipt over a cable system, Defendant willfully intercepted or received the interstate communication of the Event."  (*Id.* at ¶ 11.)  Plaintiff also claims that "Defendant then transmitted, divulged and published said communication . . . to patrons within the Establishment."  (*Id.*) Finally, Plaintiff states that "Defendant misappropriated Plaintiff's licensed exhibition of the Event and infringed upon Plaintiff's exclusive rights while avoiding proper payment to Plaintiff."  (*Id.* at ¶ 12.)  Accepting these allegations as true, the facts alleged in Plaintiff's Complaint are sufficient to state a claim for violation of Section 605 of the Communications Act.  Accordingly, default judgment is appropriate, and the only remaining issue is the amount of damages to impose.  *See Shipco*, 814 F.2d at 1014.

**B.     Damages can be determined without an evidentiary hearing.**

Rule 55(b) provides a court with discretion to convene an evidentiary hearing on the issue of damages.  *See* Fed. R. Civ. P. 55(b)(2).  When a party seeks default judgment, damages ordinarily may not be awarded "without a hearing or a demonstration by detailed affidavits

establishing the necessary facts." *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979). However, where the amount of damages can be "determined with certainty by reference to the pleadings and supporting documents," and where a hearing would reveal no pertinent information, "the court need not jump through the hoop of an evidentiary hearing." *James v. Frame*, 6 F.3d 307, 310–11 (5th Cir. 1993). A district court has "wide latitude" in deciding whether to require an evidentiary hearing when granting default judgment. *Id.* at 310. Here, Plaintiff does not request a hearing, has moved only for statutory as opposed to actual damages, and has attached detailed affidavits to its motion from which this Court may calculate damages. Accordingly, an evidentiary hearing to determine damages is unnecessary. *See Fauzi v. Royal Hospitality Servs., LLC*, 2016 WL 3167080, at *2 (S.D. Miss. June 6, 2016) (explaining that hearing on damages was not required because affidavits filed with the court adequately demonstrated movant's entitlement to damages).

   i. <u>Statutory damages in the amount of $9,000 are sufficient and reasonable.</u>

Under the Communications Act, an aggrieved party may be awarded statutory damages for each violation of Section 605 "in the sum of not less than $1,000 or more than $10,000, as the court considers just." 47 U.S.C. § 605(e)(3)(C)(i)(II).[1] Plaintiff requests the statutory maximum of $10,000 for Defendant's violation. In support of its request for $10,000 in statutory damages, Plaintiff proffers the affidavit of Thomas P. Riley. (*See* Riley Aff. [#8-1, Ex. A].) According to Mr. Riley, Plaintiff's business is damaged in several ways when proprietors such as Defendant

---

[1] Alternatively, a plaintiff may recover "the actual damages suffered by him as a result of the violation and any profits of the violator that are attributable to the violation which are not taken into account in computing the actual damages." 47 U.S.C. § 605(e)(3)(C)(i)(I). Plaintiff, however, elects to receive statutory damages, asserting that "it would be impossible to determine the full extent of the profits lost by Plaintiff and the additional damages sustained by Plaintiff as a result of Defendant's unlawful actions." (Mot. for Default J. at ¶ 10.)

broadcast sports events without obtaining a required sublicense.  In addition to lost licensing fees, Plaintiff believes that it will lose future customers as legitimate commercial establishments are unwilling and financially unable to compete with those unauthorized commercial establishments, such as Defendant's, that steal sports and other closed-circuit programming.  (*Id.* at ¶¶ 11–12.)  Specifically, establishments that lawfully broadcast closed-circuit programming lose business because they must charge their patrons more than those establishments that do not pay for the required sublicense.  Thus, such establishments are less likely to obtain sublicenses in the future, thereby eroding the base of Plaintiff's customers.  (*Id.* at ¶¶ 12–13.)  Finally, Plaintiff's goodwill and reputation are impaired because its credibility in marketing that access to the closed-circuit broadcast is limited to sublicenses is damaged.  (*Id.* at ¶ 14.)

In the Western District of Texas, courts typically award plaintiffs asserting Communications Act claims a flat sum of statutory damages based upon the cost the defendant would have incurred to purchase the rights to the broadcast, plus an additional amount sufficient to deter future violations and to account for additional damages incurred by the plaintiff such as the potential erosion of the plaintiff's customer base, and profits made by the defendant in selling food and drinks to its patrons.[2]  *See*, *e.g.*, *J&J Sports Prods., Inc. v. Bandera Cowboy Bar LLC*, No. 5:15-CV-352-DAE, 2016 WL 2349123, at *5 (W.D. Tex. May 2, 2016) (awarding plaintiff $3,500 in statutory damages where plaintiff charged a license fee of $2,200 to comparably sized commercial establishments and plaintiff submitted evidence that defendant's actions eroded its customer base); *G&G Closed Circuit Events, LLC v. Cisneros*, No. 5:15-CV-302-DAE, 2016 WL

---

[2] Alternatively, courts in this district assess statutory damages based upon the number of patrons in the establishment at the time of the violation multiplied by a "reasonable" dollar amount.  *See*, e.*g.*, *J&J Sports Prods., Inc. v. Cardenas*, No. SA-11-cv-1043-XR, 2012 WL 4434749, at *2 (W.D. Tex. Sept. 24, 2012) (awarding plaintiff $4,750 in statutory damages calculated by multiplying fifty (50) dollars by the ninety-five (95) patrons who were present for the event).

1322485, at *3 (W.D. Tex. Apr. 1, 2016) (awarding plaintiff $3,000 in statutory damages where plaintiff could have charged defendant a license fee of $800 based upon the establishment's capacity and finding an additional $2,200 sufficient and reasonable to deter future violations); *Joe Hand Promotions, Inc. v. Ol' River Hideaway*, *LLC*, No. 5:15-CV-187-DAE, 2016 WL 590251, at *3 (W.D. Tex. Feb. 11, 2016) (awarding plaintiff $3,000 in statutory damages where plaintiff could have charged $950 for a venue comparable to defendant's bar and finding an additional $2,050 reasonable to deter future violations); *J&J Sports Prods., Inc. v. Chucho's Mexican Rest., Inc.*, No. 1-15-CV-361 RP, 2015 WL 7301183, at *3 (W.D. Tex. Nov. 18, 2015) (awarding plaintiff $6,600 in statutory damages by trebling the amount defendants would have owed for a sublicensing fee to lawfully broadcast the event); *Joe Hand Promotions, Inc. v. Garcia*, 546 F. Supp. 2d 383, 386 (W.D. Tex. 2008) (awarding plaintiff $2,625 in statutory damages, treble the amount it would have cost Defendant to purchase the fight, to "account[] for the money saved by not complying with the law, as well as any profits made from food and drink sales associated with the customers who stayed and watched the fight").

According to Mr. Riley, had Defendant lawfully purchased the Event, Defendant would have incurred a sublicense fee based upon the capacity of Defendant's establishment. (Riley Aff. at ¶ 7.) Specifically, Plaintiff charges commercial establishments a minimum of $3,000 for a venue with a seating capacity of up to 100. (Rate Card [#8-1, Ex. A-3].) Plaintiff provides no evidence that the Establishment's maximum fire code occupancy exceeds 100 such that Defendant would have incurred an additional cost above the minimum $3,000 sublicense fee.[3] The only evidence

---

[3] Mr. Riley notes that the sublicense fee for a closed-circuit broadcast is based on the capacity of the establishment and varies for each event.  "For example, for this particular event, if a commercial establishment had a maximum fire code occupancy of 200 persons, the commercial sublicense fee would have been $6,000." (Riley Aff. at ¶ 7.)  But Mr. Riley provides no evidence on the subject of the Establishment's maximum seating capacity.

8

in the record concerning the capacity of the Establishment is an affidavit signed by Cynthia Grant, an investigator for Plaintiff, which lists the capacity of the Establishment as approximately sixty-seven. (Grant Aff. [#8-1, Ex. A-2] at 2.) Accordingly, the undersigned assumes for purposes of Plaintiff's Motion for Final Default Judgment that Defendant would have incurred a sublicense fee of $3,000. *See Halff Assocs., Inc. v. Warner Pac. Props. L.L.C.*, No. No. 3-08-cv-574-B, 2008 WL 3874673, at *2 (N.D. Tex. Aug. 13, 2008) (stating that a plaintiff seeking default judgment bears the burden of providing an evidentiary basis for the damages it seeks).

Trebling the sublicense fee that Defendant would have incurred had it properly purchased the Event would account for any direct and indirect losses suffered by Plaintiff, as well as deter future violations. *See*, *e.g.*, *Chucho's Mexican Rest.,* 2015 WL 7301183, at *3 ("To determine the amount of statutory damages this Court agrees with other courts [in the Fifth Circuit] that a reasonable award is treble what would have been the cost had Defendants followed the law."). Accordingly, Plaintiff should be awarded $9,000 in statutory compensatory damages.

    ii.    <u>Additional damages in the amount of $9,000 are justified.</u>

Under the Communications Act, where a court finds a violation was "committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation." 47 U.S.C. § 605(e)(3)(C)(ii). Here, Plaintiff seeks $50,000 in additional damages based on Defendant's willfulness.

Plaintiff maintains that Defendant acted "willfully" as Defendant could not have innocently accessed the broadcast of the Event because the satellite signal was "scrambled" and not available to the general public. (Riley Aff. at ¶ 9–10.) Hence, Defendant's receipt of the Event would have required the use of specialized equipment, such as an unauthorized decoder or satellite access card.

(*Id.* at ¶ 10.) Thus, "Defendant could not have obtained the transmission of the Event had Defendant not undertaken specific wrongful actions to intercept, receive and/or exhibit the telecast of the Event." (*Id.*) Courts have consistently held that such allegations justify a finding of willfulness. *See Chucho's Mexican Rest.*, 2015 WL 7301183, at *3 (citing various authorities); *see also Garcia*, 546 F. Supp. 2d at 385 (concluding that defendant's violation was willful "[b]ecause of the extreme unlikelihood that Defendant could inadvertently have acquired the signal to display the fight, coupled with its failure to file an answer denying Plaintiff's allegations on this issue").

Plaintiff also presents evidence establishing that Defendant exhibited the Event for either direct or indirect commercial gain, as the Establishment broadcast the Event in an urban area on a big-screen television to approximately thirty-four patrons, sold food and drinks during the broadcast, and charged a $10 cover. (Mot. for Default J. at ¶ 7; Grant Aff. at 1–2.) Courts have found similar evidence sufficient to prove commercial gain motivated a defendant's actions. *See e.g.*, *Chucho's Mexican Rest.*, 2015 WL 7301183, at *4 (finding commercial motive where defendant showed the event to its twenty-six patrons while offering alcoholic beverages for sale); *J&J Sports Prods., Inc. v. Morelia Mexican Rest., Inc.*, 126 F. Supp. 3d 809, 817 (N.D. Tex. 2015) (finding commercial motive where defendants advertised the showing of the event; charged a ten dollar cover to view the event; broadcasted the event on five televisions, one of which was a large-screen television, and sold food and beverages to the sixty patrons). Accordingly, an award of additional damages based upon Defendant's willfulness and commercial motive is appropriate.

Again, this Court has discretion to set the amount of additional damages based on a defendant's willfulness, subject to a maximum penalty of $100,000 for any single violation. *See* 47 U.S.C. § 605(e)(3)(C)(ii). Plaintiff seeks $50,000 in additional damages, or five times the

maximum statutory damages. Plaintiff contends that such an award is necessary to deter Defendant and other commercial establishments from stealing protected communications. Although the undersigned agrees with Plaintiff that some additional amount of damages are warranted here as a deterrent, five times the maximum statutory damages is not.

The purpose of additional damages is to "send a strong signal that such unauthorized activity will not be profitable." *Garcia*, 546 F. Supp. 2d at 386. In calculating the amount of additional damages, courts typically apply a multiplier of the statutory award or sublicense cost, considering the number of televisions used to broadcast the event, the number of patrons present on the day in question, whether the defendant imposed a cover charge and/or advertised the event, whether the defendant was a repeat offender, and the need to deter future violations. *See Morelia Mexican Rest.*, 126 F. Supp. 3d at 818 (collecting cases). At the same time, an award of additional damages should not "impose[] an insurmountable financial burden." *Garcia*, 546 F. Supp. 2d at 386.

Here, the evidence establishes that the Event was displayed on a single big-screen television; that only thirty to thirty-four patrons were in attendance; and that the capacity of the Establishment is only approximately sixty-seven. (Grant Aff. at 1–2.) In addition, there is no evidence that Defendant advertised the Event to attract a greater audience or that Defendant is a repeat offender. On the other hand, Defendant broadcasted the event in an urban area, charged a $10 cover to watch the Event, and patrons purchased food and beverages while viewing the Event. (*Id.* at 1.) Under the circumstances, the undersigned finds that an additional damages award of $9,000 is appropriate, an amount equal to three times the sublicensing fee Defendant should have paid to broadcast the Event.

      iii.    <u>Attorney's fees in the amount of $1,000 should be awarded.</u>

Counsel for Plaintiff, David M. Diaz, also seeks attorney's fees in the amount of one-third (1/3) of the damages awarded herein or, alternatively, a "lodestar" fee of $1,000 at a blended rate of $250 per hour for the four hours he expended in litigating this case to a default judgment, as well as an unspecified amount of costs. (Diaz Aff. [#8-1, Ex. B] at ¶¶ 6, 9). Under the Communications Act, the Court is required to order the recovery of full costs, including attorney's fees, to an aggrieved party who prevails. *See* 47 U.S.C. § 605(e)(3)(B)(iii). The Fifth Circuit has stated that the calculation of an award of attorney's fees is a two-step process. In awarding attorney's fees, a trial court must first determine the "lodestar" amount, which is calculated "by multiplying the number of hours reasonably expended by an appropriate rate in the community for the work at issue." *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 490 (5th Cir. 2012). Once the "lodestar" amount is calculated, the trial court can adjust it based on the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974). Under *Johnson*, one of the twelve factors to be considered when setting a reasonable award of attorney's fees is "whether the fee is fixed or contingent." *Id.* at 718. However, a "strong presumption" exists that the "lodestar" represents the reasonable fee, and a fee applicant who seeks more than that bears the burden of showing that "such an adjustment is *necessary* to the determination of a reasonable fee." *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) (quoting *Blum v. Stenson*, 465 U.S. 886, 898 (1984)). The Fifth Circuit reviews a district court's award of attorney's fees for abuse of discretion. *See Simi Inv. Co. v. Harris Cty., Tex.*, 236 F.3d 240, 255 (5th Cir. 2000); *Freiler v. Tangipahoa Parish Bd. of Educ.*, 185 F.3d 337, 348 (5th Cir.1999).

Plaintiff seeks a one-third contingent fee or, alternatively, attorney's fees in the amount of $1,000. Mr. Diaz maintains that a one-third contingent fee is reasonable for the prosecution of anti-piracy cases. (Diaz Aff. at ¶ 7); s*ee J & J Sports Prods., Inc. v. Casita Guanajuato, Inc.*, No.

A-13-CA-824-SS, 2014 WL 1092177, at *3 (W.D. Tex. Mar. 19, 2014) ("An award equal to one-third of the recovery . . . is reasonable for cases such as this, and is frequently the measure of attorney's fees used in Communications Act cases by federal courts in Texas."). For purposes of calculating the "lodestar" amount, Mr. Diaz estimates his fee to be $1,000 for his time and work on this case. (Diaz Aff. at ¶ 9.) This sum is based on a rate of $250 per hour and approximately four hours of work. (*Id.*)

Given this estimate, as well as the evidence and circumstances of this case, the undersigned finds Plaintiff's request for $1,000 in attorney's fees to be more reasonable than a one-third contingency fee. As the undersigned recommends a total statutory and additional damages award of $18,000, a one-third contingent fee would amount to $6,000, or six times the "lodestar" amount and a rate of $1,500 per hour. The undersigned believes that this would be an unreasonable fee. *See Morelia Mexican Rest.*, 126 F. Supp. 3d at 818–819 (finding that an award of attorney's fees of $1,000 for four hours of work was more reasonable than a one-third contingency fee).

Having reviewed Mr. Diaz's affidavit, the undersigned finds that the rate of $250 is reasonable for an attorney practicing in the field of anti-piracy litigation with comparable experience to Mr. Diaz. The undersigned also finds that the four hours expended by Mr. Diaz in litigating this case is reasonable. The undersigned will therefore recommend an award of $1,000 in attorney's fees, utilizing the "lodestar" method proposed by Mr. Diaz.

Plaintiff's counsel also seeks attorney's fees for possible post-trial and appellate services. Specifically, he seeks attorney's fees for the following possible future appeals: an award of $2,500 each time Plaintiff obtains a writ of execution, writ of garnishment, writ of attachment, or other post-judgment writ; $10,000 in the event Defendant files a post-judgment or pre-appeal motion; $25,000 in the event Defendant files an appeal to the Fifth Circuit; $5,000 in the event Defendant

files a motion for rehearing or reconsideration in the Fifth Circuit; $25,000 for making and/or responding to a petition for certiorari to the U.S. Supreme Court; and $75,000 for an appeal to the United States Supreme Court in the event a petition for certiorari review is granted. (Diaz Aff. at ¶ 11.) The undersigned finds that an award for future possible appeals is not warranted. *See Sports Prod. v. Rodriguez*, No. SA-13-CA-342-XR, 2013 WL 3967833, at *2 (W.D. Tex. July 31, 2013) (granting fees and costs already expended but denying request for fees for future appeals). Nothing in this Report and Recommendation should be construed as preventing Plaintiff from filing a motion for additional attorney's fees in the event that Defendant files post-judgment or pre-appeal motions or an appeal.

With respect to costs, which Plaintiff is entitled to recover under the Communications Act, the Court observes that Plaintiff has neglected to specify the amount of costs it seeks to recover. In addition, Plaintiff has not provided any evidence establishing the costs it has incurred. As the Court is unable to determine the sum of the costs sought or the manner in which a sum can be computed, the undersigned recommends that Plaintiff's requests for costs be denied at this time. Plaintiff may, however, provide supplementary briefing and evidence establishing the amount of costs it seeks.

### V. Conclusion and Recommendation

Having considered Plaintiff's motion, the case file, and the lack of response from Defendant, the undersigned recommends that Plaintiff J&J Sports Productions, Inc.'s, Motion for Final Default Judgment [#8] be **GRANTED IN PART** as follows:

1. That judgment by default is hereby entered in favor of Plaintiff J&J Sports Productions, Inc., and against Defendant Anthony R. Grayer, individually and doing business as Club Supreme; and

2.     That Plaintiff hereby recovers statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) from Defendant in the amount of $9,000; and

3.     That Plaintiff hereby recovers additional damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii) from Defendant in the amount of $9,000; and

4. That Plaintiff hereby recovers reasonable attorney's fees from Defendant in the amount of $1,000.

5. The Court also awards Plaintiff post-judgment interest on the amounts awarded herein at the appropriate annual rate from the date of this judgment until paid.

6. All writs and processes for the enforcement and collection of this judgment may issue as necessary.  In connection with any writ of execution in this case, the Court directs the United States Marshals Service to use any means or force reasonably necessary to satisfy this judgment.

7. This is a final judgment.

In all other respects, Plaintiff's motion should be **DENIED.**

## VI.  Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The party shall file the objections with the clerk of the court, and serve the objections on all other parties.  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not

consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.  *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000).  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 19th day of November, 2018.

_____
ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE